TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






ON REMAND









NO. 03-10-00041-CR

NO. 03-10-00042-CR






Gerald Christopher Zuliani, Appellant


v.


The State of Texas, Appellee






FROM THE COUNTY COURT AT LAW NO. 1 OF WILLIAMSON COUNTY,

NOS. 09-05342-1 & 09-07509-1, HONORABLE SUZANNE BROOKS, JUDGE PRESIDING






O P I N I O N


Gerald Christopher Zuliani was charged with the offenses of reckless driving and
deadly conduct. See Tex. Transp. Code Ann. § 545.401 (West 2011); Tex. Penal Code Ann. § 22.05
(West 2005). A jury convicted Zuliani of both offenses, assessing punishment at thirty days'
confinement and a $100 fine for the reckless-driving conviction and one year's confinement and
a $3,000 fine for the deadly-conduct conviction. We held on original submission that Zuliani's
convictions violated the prohibition against doubly jeopardy because the convictions represented
multiple punishments for the same offense. See Zuliani v. State, 338 S.W.3d 213, 218-19
(Tex. App.--Austin 2011, pet. granted). Accordingly, we affirmed Zuliani's conviction for deadly
conduct and vacated his conviction for reckless driving. See id.

The court of criminal appeals vacated our judgment, holding that "[i]mpermissible
multiple punishment occurs when the same criminal act is punished twice under two distinct
statutory provisions and the Legislature intended the conduct be punished only once." See Zuliani
v. State, 353 S.W.3d 872, 872 (Tex. Crim. App. 2011) (emphasis added). Because we did not
analyze whether the legislature intended Zuliani's conduct to be punished only once, the court of
criminal appeals remanded this case to us for further consideration. See id. After doing so, we reach
the same conclusion that we did on original submission.


BACKGROUND AND PROCEDURAL HISTORY The underlying prosecution in this case arose from a motor-vehicle collision that
occurred on June 7, 2009, on Farm-to-Market Road 1431 (FM 1431) in Williamson County, Texas. (1)
An eye-witness to the collision testified that he was driving a motorcycle eastbound on FM 1431
when he observed a small blue car turn from a side street onto the right lane of eastbound FM 1431,
in front of a maroon truck. The witness testified that the driver of the maroon truck, later identified
as Zuliani, began following closely behind the blue car, driven by Gretchen Gruber. When both
Gruber and Zuliani moved their vehicles into the left lane simultaneously, Zuliani made a "very
violent move back into the right lane," then accelerated to pull ahead of Gruber. At that point,
Zuliani "intentionally, angrily moved in front of [Gruber] and slammed on the brakes." When asked
to clarify whether Zuliani merely tapped his brakes, the witness stated, "No, no, no . . . . White
smoke slammed on the brakes." Gruber then lost control of her vehicle and traveled across the right
lane into a guardrail, before coming back into the left lane and hitting Zuliani's vehicle, sending both
vehicles spinning. When the vehicles came to rest, the witness stopped to render aid. (2) Gruber
suffered a bruised big toe as a result of the incident, but no other injuries.

 Zuliani was charged with reckless driving by "cutting another vehicle off in traffic
then slamming on his brakes, causing another vehicle to strike a guardrail." See Tex. Transp. Code
Ann. § 545.401. The State subsequently amended the charging instrument to include a deadly
conduct charge based on Zuliani's "cutting [Gruber's] vehicle off in traffic then slamming on the
brakes, causing her vehicle to strike a guardrail." See Tex. Penal Code Ann. § 22.05. After hearing
the evidence, the jury found Zuliani guilty of both reckless driving and deadly conduct, assessing
punishment of 30 days' confinement and a $100 fine for reckless driving and one year's confinement
and a $3,000 fine for deadly conduct.

 On original submission, Zuliani argued that his conviction for reckless driving and
deadly conduct violated the prohibition against double jeopardy. (3) See Evans v. State, 299 S.W.3d
138, 140-41 (Tex. Crim. App. 2009); see also U.S. Const. amend. V; Tex. Const. Art. 1, § 14. (4)
Applying a Blockburger analysis, this Court concluded that Zuliani's two convictions represented
multiple punishments for the same offense, thus violating the prohibition on double jeopardy.
See Zuliani, 338 S.W.3d at 218-19; see also Blockburger v. United States, 284 U.S. 299, 304 (1932).
Accordingly, we affirmed Zuliani's conviction for deadly conduct and vacated his conviction for
reckless driving. See Zuliani, 338 S.W.3d at 218-19; see also Bigon v. State, 252 S.W.3d 360, 372
(Tex. Crim. App. 2008) (noting that if convictions violate double jeopardy, appellate courts
affirm conviction of most serious offense, i.e., offense with greatest sentence assessed, and vacate
other convictions).

 Upon granting the State's petition for discretionary review, the court of criminal appeals
found that our double-jeopardy "analysis was correct, but incomplete." See Zuliani, 353 S.W.3d
at 872. The court vacated our judgment and remanded this cause for us to consider whether the
legislature intended the conduct in this case to be punished more than once.


DISCUSSION The Double Jeopardy Clause of the Fifth Amendment, applicable to the states through
the Fourteenth Amendment, shields defendants against (1) a second prosecution for the same offense
after acquittal or conviction and (2) multiple punishments for the same offense stemming from a
single prosecution. See Evans, 299 S.W.3d at 140-41. This case concerns the second category, given
that after a single trial, Zuliani was punished twice for two offenses arising from the same series of
events. See id. "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy
Clause does no more than prevent the sentencing court from prescribing greater punishment than
the legislature intended." Gonzales v. State, 304 S.W.3d 838, 845 (Tex. Crim. App. 2010) (quoting
Missouri v. Hunter, 459 U.S. 359, 366 (1983)). Therefore, whether the multiple punishments in this
case constitute a violation of double jeopardy is "purely a question of legislative intent." See id.

 "The traditional indicum of that legislative intent is the so-called 'same elements'
test of Blockburger v. United States." Id. at 845 (citing Blockburger, 284 U.S. at 304). Under the
Blockburger test, if conduct violates two statutory provisions, but one of the provisions contains all
of the elements of the other, we presume that the legislature intended to punish the conduct only
once. See id. Texas has adopted a modified Blockburger test, described as a "cognate-pleadings
approach," to determine when two offenses contain the same elements. Bigon, 252 S.W.3d at 370
(citing Parrish v. State, 869 S.W.2d 352, 354 (Tex. Crim. App. 1994)). Under the cognate-pleadings
approach, we do not consider the statutory elements in the abstract, but rather, "we focus on the
elements alleged in the charging instrument" to determine whether the offenses as charged require
proof of the same elements. See id.

 On original submission, we determined that under the cognate-pleadings approach
to Blockburger, all of the elements of reckless driving were included in the elements of deadly
conduct as charged in this case. See Zuliani, 338 S.W.3d at 218-19 (citing Bigon, 252 S.W.3d at
370). The court of criminal appeals determined that our Blockburger analysis was correct, and thus
agreed with our conclusion that these two crimes constituted a single offense under Blockburger.
See Zuliani, 353 S.W.3d at 872.

 However, for purposes of multiple-punishment analysis, the Blockburger test is only a
tool of statutory construction--and not even an exclusive one--used to determine legislative intent.
Gonzales, 304 S.W.3d at 845. Therefore, "an accused may be punished for two offenses even though
they would be regarded as the same under a Blockburger analysis if the Legislature has otherwise
made manifest its intention that he should be." Id. We did not discuss legislative intent in our
original opinion. Thus, the court of criminal appeals remanded this cause for us to "consider whether
the Legislature intended the conduct [in this case] to be punished only once."

 Within the context of double jeopardy, the court of criminal appeals has created two
distinct standards for reviewing legislative intent, which we will refer to as the "clear-expression"
and "Ervin-factors" standards. Compare Littrell v. State, 271 S.W.3d 273, 278 (Tex. Crim. App.
2008) (concluding that legislature must clearly express intent to punish same offense twice within
statute), with Bigon, 252 S.W.3d at 371 (analyzing legislative intent under factors set forth in Ervin
v. State, 991 S.W.2d 804, 814 (Tex. Crim. App. 1999)). In previous cases, the court has indicated
that when, as here, two offenses are the same under Blockburger, the clear-expression standard
applies. See, e.g., Littrell, 271 S.W.3d at 278. However, the court's order remanding this case appears
to indicate that we should apply an Ervin-factors analysis. Therefore, out of an abundance of caution,
we will analyze this case under both standards.


"Clear-expression" standard

 The first standard we will consider is the clear-expression standard discussed in
Littrell v. State. 271 S.W.3d at 276-78. In Littrell, the court of criminal appeals determined that as
charged, aggravated robbery contained all of the elements of felony murder, and thus the two
offenses were the same under a Blockburger analysis. See id. at 276-77 (quoting Bigon, 252 S.W.3d
at 370) (noting that Texas applies cognate-pleadings approach to Blockburger analysis). The court
noted that because the two offenses were the same under Blockburger, there was a presumption that
"they constitute[d] the same offense for double-jeopardy purposes." Id. at 278. The court proceeded
to determine "whether the Legislature [had] clearly expressed an intention that an accused should
be punished for both offenses, notwithstanding the Blockburger analysis." Id. (emphasis added).

 The court stated that "[t]he Legislature knows well enough how to plainly express its
intention that an accused should suffer multiple punishments for the same offense." Id. An example
of plain expression of legislative intent, the court noted, was section 22.04 of the penal code, which
clearly states that a person who is charged with injury to a child, elderly individual, or disabled
individual may also be prosecuted and punished for "any other penal-code violation to which his
conduct may subject him." Id. (quoting Tex. Penal Code Ann. § 22.04(h) (West 2011)). Similarly,
the court explained, the legislature clearly expressed its intent in section 71.03(3) of the penal
code that an accused may be punished both for engaging in organized criminal activity by
committing capital murder and for the underlying capital murder itself. See id. (citing Garza v. State,
213 S.W.3d 338, 251-52 (Tex. Crim. App. 2007)); see also Tex. Penal Code Ann. § 71.03(3)
(West 2011) ("It is no defense to prosecution under Section 71.02 [Engaging in Organized Criminal
Activity] that . . . a person has been charged with, acquitted, or convicted of any offense listed in
Subsection (a) of Section 71.02[.]"). The court concluded that, "[i]n the absence of such a comparably
clear expression of contrary legislative intent," the presumption raised by Blockburger was not
overcome, and thus felony murder and aggravated robbery were the same offense for double-jeopardy
purposes. Littrell, 271 S.W.3d at 278 (emphasis added).

 Under this clear-expression standard, if, as charged, two offenses are the same under
Blockburger, then the offenses may only be punished once unless the statutory language clearly
expresses the legislature's intent to punish the conduct separately. See id. (5) The court of criminal
appeals agreed with our conclusion that reckless driving and deadly conduct as charged in this case
were the same offense under Blockburger. While not discussed in our original opinion, there is
nothing in the language of either the reckless driving or deadly conduct statutes which indicates that
these offenses may be punished separately. See Tex. Transp. Code Ann. § 545.401; Tex. Penal Code
Ann. § 22.05. Therefore, under the clear-expression standard, we find that the legislature has not
manifested its intent to allow multiple punishments for these offenses. See Littrell, 271 S.W.3d at
278. Thus, Zuliani's convictions for reckless driving and deadly conduct violate the prohibition on
double jeopardy. See id.


Ervin-factors analysis

 In a related but separate series of cases, the court of criminal appeals has applied
a non-exclusive list of factors to consider when determining whether the legislature intended to
punish conduct only once, even though the conduct violated separate statutory provisions. See Ervin,
991 S.W.2d at 814. These so-called "Ervin factors" include:


(1) whether the offenses are in the same statutory section;

 

(2) whether the offenses are phrased in the alternative;

 

(3) whether the offenses are named similarly;

(4) whether the offenses have common punishment ranges; 


(5) whether the offenses have a common focus; 


(6) whether the common focus tends to indicate a single instance of
conduct; 


(7) whether the elements that differ between the two offenses can be
considered the same under an imputed theory of liability that would
result in the offenses being considered the same under Blockburger;
and


(8) whether there is legislative history containing an articulation
of an intent to treat the offenses as the same or different for
double-jeopardy purposes.


Bigon, 252 S.W.3d at 371 (citing Ervin, 991 S.W.2d at 814).

 In Gonzales v. State, the court of criminal appeals indicated, but did not expressly
state, that the Ervin factors should be applied only when conduct constitutes two separate offenses
under Blockburger. (6) See 304 S.W.3d at 845-46. This is consistent with the court of criminal appeals's
other decisions, which have applied the Ervin factors when two offenses are different under
Blockburger, but applied the stricter "clear-expression" standard when two offenses are the same
under Blockburger. (7)

 However, the court of criminal appeals has never expressly stated that the Ervin
factors should only be considered if two offenses are different under Blockburger. In its order
remanding this case, the court cited Bigon and Ervin--two landmark Ervin-factors cases. See
Zuliani, 353 S.W.3d at 872 (citing Bigon, 252 S.W.3d at 370; Ervin, 991 S.W.2d at 814).
Furthermore, the court asked us to determine "whether the Legislature intended [this] conduct to be
punished only once," which is language taken from Langs v. State, which itself cites to Ervin's
legislative-intent analysis. See Langs v. State, 183 S.W.3d 680, 685 n.12 (Tex. Crim. App. 2006)
(citing Ervin, 991 S.W.2d at 816-17, as example of when legislature intended conduct be punished
only once). Given our conclusion that these offenses are the same under Blockburger, we believe
that the clear-expression standard is the applicable standard in this case. See Littrell, 271 S.W.3d at
278. Nonetheless, we will, out of an abundance of caution, analyze this case under the Ervin factors.


Analysis

 The majority of the factors listed in Ervin do not clearly answer whether the
legislature intended the conduct in this case to be punished twice. On the one hand, reckless driving
and deadly conduct are not in the same code provisions, let alone the same statutory sections. See
Tex. Transp. Code Ann. § 545.401; Tex. Penal Code Ann. § 22.05. Furthermore, the offenses are
not named similarly. Finally, reckless driving has a lower punishment range than deadly conduct.
See Tex. Transp. Code Ann. § 545.401 (setting maximum punishment for reckless driving at thirty
days confinement and $200 fine); Tex. Penal Code Ann. § 22.05(e) (punishing deadly conduct as
Class A misdemeanor subject to one year confinement and $4,000 fine under section 12.21 of
penal code). Thus, the first, third and fourth factors listed in Ervin could support the inference that
the legislature intended reckless driving and deadly conduct to be punished separately. See 991
S.W.2d at 814.

 However, factors two, seven, and eight do not support such a conclusion. See id.;
see also Gonzales, 304 S.W.3d at 846 (noting that legislature must "make manifest its intention" to
punish single act twice). The second factor is inapplicable, as offenses listed in separate sections
cannot be stated in the alternative. See Bigon, 252 S.W.3d at 371 (noting that second factor not
applicable because offenses in different statutory sections). Similarly, the seventh factor would
support the conclusion that the legislature intended this conduct to be punished once because, as we
explained on original submission, the offenses as charged are the same under Blockburger. See
Ervin, 991 S.W.2d at 814; Zuliani, 338 S.W.3d at 218-19. Finally, as the State concedes, there is
nothing in the legislative histories of either statute to indicate that the legislature intended these
offenses to be punished separately. Therefore, our analysis hinges on the fifth and sixth Ervin factors,
i.e., whether the offenses share a common focus and whether that focus indicates a single instance
of conduct.

 As the court explained in Huffman v. State, "the focus or 'gravamen' of the offense
seems to be one of the best indicators of the allowable unit of prosecution prescribed by the
legislature." See 267 S.W.3d 902, 907 (Tex. Crim. App. 2008). An offense may be focused in one
of three ways: on the result of the conduct, on the nature of the conduct, or on the circumstances
surrounding the conduct. Id.; see also McQueen v. State, 781 S.W.2d 600, 603 (Tex. Crim. App.
1989). A result-of-conduct crime, such as murder or injury to a child, is one in which an "unspecified
conduct [] is criminalized because of its result . . . ." See McQueen, 781 S.W.2d at 603 (citations
omitted); see also Johnson v. State, 364 S.W3d 292, 298 (Tex. Crim. App. 2012) (concluding
aggravated assault is result-of-conduct crime because focus is injury to victim). By contrast, a
nature-of-conduct offense, such as gambling or assault by threat, is criminalized because the nature
of the act itself is unlawful, regardless of its consequence. See McQueen, 781 S.W.2d at 603; see
also Marino v. State, 186 S.W.3d 167, 174 (Tex. App.--Austin 2006, pet. ref'd) (noting that assault
by threat is nature-of-conduct offense). Finally, "[w]here otherwise innocent behavior becomes
criminal because of the circumstances under which it is done," the offense is considered a
circumstances-surrounding-the-conduct crime. See McQueen, 781 S.W.2d at 603 (noting that
operating motor vehicle without consent is unlawful even though operating vehicle not inherently
criminal). "Some offenses, such as capital murder, may contain both result of conduct and nature
of conduct elements, and the question becomes which aspect of the statute predominates . . . ."
Huffman, 267 S.W.3d at 907.

 Reckless driving is not focused on the result of the driving, given that the offense is
committed regardless of whether the driving causes any harm. Tex. Transp. Code Ann. § 545.401;
Cf. Johnson v. State, 364 S.W3d 292, 298 (Tex. Crim. App. 2012) (concluding aggravated assault
focuses on injury to victim). Similarly, reckless driving is not a nature-of-conduct crime because
driving at fast speeds or, as in this case, braking quickly "is not criminal by its very nature." See
McQueen, 781 S.W.2d at 603 (noting that driving motor vehicle not inherently criminal); see also
Fernandez v. State, 306 S.W.3d 354, 369 (Tex. App.--Fort Worth 2010, no pet.) (Dauphinot, J.,
dissenting) (finding that reckless driving cannot occur when persons or property not near enough for
safety to be at risk). Therefore, reckless driving is a circumstances-surrounding-the-conduct offense,
and driving which endangers "the safety of persons or property" is the circumstance which is meant
to be criminalized. See Tex. Transp. Code Ann. § 545.401(a); see also Huffman, 267 S.W.3d at
908-09 (concluding that "accident and a victim suffering an injury" is focus of fleeing the scene);
McQueen, 781 S.W.2d at 603 (noting that "without owner's consent" is focus of unauthorized use
of motor vehicle).

 Similarly, deadly conduct is a circumstances-surrounding-the-conduct offense. See
Tex. Penal Code Ann. § 22.05(a). Deadly conduct is not concerned with the results of the offense
because the crime may be committed regardless of whether anyone is hurt. See Guzman v. State,
188 S.W.3d 185, 196 (Tex. Crim. App. 2006) (noting that deadly conduct "generally aimed at
capturing conduct that falls short of harming another . . . ."). Furthermore, deadly conduct is not a
nature-of-conduct offense because the underlying conduct does not need to be criminal in itself, but
rather must be conducted under circumstances that put another individual in threat of serious bodily
injury. Therefore, deadly conduct, like reckless driving, is focused on the circumstances surrounding
the conduct, i.e., conduct that places people or property at risk of injury. See Bigon, 252 S.W.3d
at 371 (noting that sameness of focus indicates legislature did not intend multiple punishments).

 Furthermore, the focus of these offenses indicates a single instance of conduct. See
Huffman, 267 S.W.3d at 907. As the Huffman court explained, "[i]f 'circumstances surrounding the
conduct' is the focus of the offense, . . . different types of conduct could establish alternate methods
of committing the same offense rather than different offenses, so long as the circumstances
surrounding the conduct are the same." Id. Given that reckless driving and deadly conduct both
focus on the circumstance of the defendant's conduct--in this case, driving which placed Gruber in
danger--the gravamen of the offense indicates a single offense. See id.

 The State contends that reckless driving focuses on the danger to "the public at large"
while deadly conduct is concerned with danger to a specific individual. This is a distinction without
meaning, as reckless driving cannot endanger the "public at large" unless there is an actual person
or piece of property that is placed in danger by the reckless conduct. See Fernandez, 306 S.W.3d
at 369 (Dauphinot, J., dissenting) (explaining that reckless driving cannot occur unless person or
property placed in danger). As we have discussed, reckless driving and deadly conduct share a
common focus, and that focus indicates a single incidence of conduct. Therefore, as applied to this
case, the fifth and sixth Ervin factors indicate that the legislature intended to punish reckless driving
and deadly conduct only once. See 991 S.W.2d at 814. Therefore, even under an Ervin analysis, the
legislature likely did not intend to punish the conduct in this case more than once. Id.

 Thus, regardless of whether we apply the clear-expression or Ervin-factors standard,
we conclude that Zuliani's convictions for both reckless driving and deadly conduct violate the
prohibition on double jeopardy. See Gonzales, 304 S.W.3d at 845-86. Accordingly, we affirm
Zuliani's conviction for deadly conduct and vacate his conviction for reckless driving. See Bigon,
252 S.W.3d at 372 (noting that if convictions violate double jeopardy, appellate courts affirm
conviction of most serious offense and vacate other convictions).


CONCLUSION

 We affirm the conviction for deadly conduct, and vacate and dismiss the conviction
for reckless driving.


 __________________________________________

 Diane M. Henson, Justice

Before Chief Justice Jones, Justices Henson and Goodwin

 Concurring Opinion by Justice Goodwin


03-10-00041-CR Vacated and Dismissed

03-10-00042-CR Affirmed

Filed: September 14, 2012

Publish
1. The facts recited herein are taken from testimony and exhibits admitted at trial.
2. At trial, other witnesses including Gruber, a passenger in Zuliani's car, and an accident
reconstruction expert gave varying accounts of this accident. See Zuliani v. State, 338 S.W.3d 213,
216-17 (Tex. App.--Austin 2011). Because the specific sequence of events surrounding the accident
is not relevant to our discussion on remand, we do not repeat the witnesses' other accounts here.
3. Zuliani also claimed that the evidence was insufficient to support his conviction for deadly
conduct and reckless driving. Having dismissed Zuliani's reckless driving conviction, we concluded
that the evidence was sufficient to support his conviction for deadly conduct. See Zuliani, 338 S.W.3d
at 220-221. The court of criminal appeals vacated our judgment, but not our opinion, and remanded
this case for further consideration without addressing our sufficiency-of-the-evidence analysis. See
Tex. R. App. P. 78.1(f). For the reasons set forth in our prior opinion, we reaffirm and readopt our
holding with regard to Zuliani's legal-sufficiency claim. See Zuliani, 338 S.W.3d at 220-221.
4. Zuliani did not raise his double-jeopardy claim at the trial court. However, this claim may
be raised for the first time on appeal when the double-jeopardy violation is clearly apparent on the
face of the record and no legitimate state interest is served by the enforcement of default rules of
procedure. See Gonzalez v. State, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000).
5. See also Garza v. State, 213 S.W.3d 338, 251-52 (Tex. Crim. App. 2007) (concluding that
legislature clearly expressed intent in statute that organized criminal activity and underlying
crime can be punished twice); Patterson v. State, 152 S.W.3d 88, 91-92 (Tex. Crim. App. 2004)
(concluding that statutory language did not authorize "stop-action" prosecution for both indecent
exposure and sexual assault where exposure was incidental to assault).
6. The court cited Ervin in the context of determining legislative intent when two offenses
were different under Blockburger, but cited Garza in the context of determining legislative intent
when two offenses were the same under Blockburger. See Gonzales v. State, 304 S.W.3d 838,
845-46 (citing Ervin v. State, 991 S.W.2d 804, 814 (Tex. Crim. App. 1999)); but see Gonzales,
304 S.W.3d at 845 n.23 (citing Garza, 212 S.W.3d at 351-52). The court in Garza applied the
"clear-expression" standard outlined above, and did not reference the Ervin factors. See 212 S.W.3d
at 351-52; supra n.5.
7. Compare Weinn v. State, 326 S.W.3d 189, 192-94 (Tex. Crim. App. 2010) (applying
Ervin factors where offenses have different elements under Blockburger); Gonzales, 304 S.W.3d
at 846-47; Bigon v. State, 252 S.W.3d 360, 370 (Tex. Crim. App. 2008), with Littrell v. State, 271
S.W.3d 273, 278 (Tex. Crim. App. 2008) (applying "clear-expression" standard where offenses have
same elements under Blockburger); Garza, 213 S.W.3d at 351-52; Patterson, 152 S.W.3d at 91-92.